UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA

EDWARDO MUNOZ,

    *Petitioner*,

v.

DIGITAL MEDIA SOLUTIONS, LLC, a Delaware limited liability company.

    *Respondent*.

Case No. 8:21-mc-89-VMC-AEP



## PETITIONER'S MOTION TO COMPEL COMPLIANCE WITH SUBPOENA

### REQUESTED RELIEF

An Order compelling Digital Media Solutions, LLC to provide a complete response to the DMS Subpoena (Ex. A) within fourteen (14) days.

### STATEMENT OF THE BASIS FOR RELIEF REQUESTED

1.    On January 21, 2021, Petitioner Edwardo Munoz ("Munoz" or "Petitioner") issued a Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action directed to Respondent Digital Media Solutions, LLC ("DMS" or "Respondent"), which specified a response date of February 19, 2021. (*See* "DMS Subpoena", a true and accurate copy of which is attached hereto as Ex. A.)

2.    On January 26, 2021, DMS agreed to accept service via email of the DMS Subpoena and requested an extension to respond. (*See* January 26, 2021 Email,

Fee paid
TPA 06 4213

a true and accurate copy of which is attached hereto as Exhibit B.)

3. On March 12, 2021, DMS produced its objections and responses to the subpoena, along with its corresponding document production.

4. Thereafter, DMS and Petitioner conferred regarding deficiencies in DMS's response to the subpoena. At that time, DMS agreed to search for and produce additional documents and data.

5. Since that time, DMS has not produced any further information and has refused to communicate with Petitioner's counsel.

6. Consequently, Petitioner now moves the Court for an Order compelling DMS to provide a complete response to the subject subpoena within fourteen (14) days of the date of the Order.

## MEMORANDUM OF LEGAL AUTHORITY

### I. INTRODUCTION

This action arises out of Respondent DMS's refusal to provide a complete response to a subpoena issued in an action pending in the United States District Court for the Eastern District of California. After receiving the subject subpoena, DMS provided a partial response to the subpoena, but withheld documents and information subject to various boilerplate objections. Following a conferral, DMS agreed to search for and produce additional information. Now, more than two months have passed since DMS agreed to produce additional documents, and Petitioner has not received any additional information and DMS has cutoff communication with Petitioner's counsel. As such, this Court should enter an Order

compelling DMS to comply with the subject subpoena.

II.     **FACTUAL & PROCEDURAL BACKGROUND**

Petitioner Munoz is the plaintiff in the underlying case captioned *Munoz v. Schooladvisor, LLC*, pending in the United States District Court for the Eastern District of California alleging violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.* ("TCPA"). (*See Munoz v. Schooladvisor, LLC*, Case No. 1:20-cv-00440-NONE-EPG (E.D. Cal. 2020), Complaint, Dkt. 1.) Relevant here, Petitioner asserts that Defendant Schooladvisor, LLC ("SchoolAdvisor") violated the TCPA by placing unsolicited text messages to Munoz and a class of similarly situated consumers using an automatic telephone dialing system ("ATDS"). (*See id.* ¶¶ 12-16.)

Through discovery, it was revealed that DMS sent the text messages on behalf of SchoolAdvisor.[1] (*See* Declaration of Taylor Smith ("Smith Decl."), attached hereto as Grp. Ex. C, ¶ 4.) SchoolAdvisor claims that Munoz's lead information was provided by a company known as "Conceptual Media" pursuant to a contract with DMS. (*See id.* ¶ 6.) SchoolAdvisor produced the agreement between DMS and Conceptual Media, which was later reproduced by DMS in response to the subpoena. (*Id.* ¶ 7; *see also* Conceptual Media Agreement, attached hereto as Ex. D.) The terms of the agreement require Conceptual Media to compile and maintain a

---

[1] SchoolAdvisor is a wholly owned subsidiary of DMS (Smith Decl. ¶ 5), and both entities share the same principal office address and manager (*id.*).

database of consumers who have consented to receive text messages. (Conceptual Media Agreement, Ex. D at pg. 1.) Further, the agreement grants DMS a license to manage and access the database of consumer information to send text messages and emails. (*Id.* at § 1.1) Pursuant to the agreement, DMS is Conceptual Media's exclusive text message marketing partner, and DMS would control the manner in which text messages were sent. (*Id.* at §§ 1.2, 2.3 - 2.5.)

Based on this disclosure, Munoz issued a Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action directed to DMS on January 21, 2021. (DMS Subpoena, Ex. A; Smith Decl. ¶ 8.) The DMS Subpoena commanded all documents to be produced at a mutually agreeable location on or before February 19, 2021. (*See* DMS Subpoena, Ex. A.) On January 26, 2021, counsel for DMS confirmed that they would accept service of the subpoena on behalf of DMS and requested an additional fourteen days to respond until March 5, 2021, which was later extended further until March 12, 2021. (Smith Decl. ¶ 10; *see also* January 26, 2021 Email, Ex. B.)

On March 12, 2021, DMS produced its objections and responses to the subpoena, along with its corresponding document production. (Smith Decl. ¶ 11; *see also* DMS Subpoena Response, attached hereto as Ex. E.) Following a review of the documents provided, Plaintiff's counsel reached out to DMS's counsel to confer regarding its deficient response. (Smith Decl. ¶ 12.) On March 24, 2021, counsel for both parties conferred regarding DMS's response to the subpoena. (*Id.* ¶ 13.) During the conference, DMS agreed to search for and produce additional documents in

response to the subpoena. (*Id.*)

Specifically, DMS agreed to produce the following additional documents and information: (1) records of consumers that it claims provided lead information in the same manner as Petitioner, (2) records of text messages sent to consumers who are similarly situated to Petitioner, (3) information regarding the type of dialing system used to send the texts at issue and the server or computer system that stored the data, along with an inspection of both, and (4) documents identifying SchoolAdvisor's relationship to DMS, including any communications relating to Petitioner, the underlying lawsuit, or the claims asserted therein. (*Id.* ¶¶ 14-19.) DMS agreed to produce additional documents on or before April 7, 2021. (*Id.* ¶ 20.)

On April 9, 2021, DMS reached out and stated that it would provide an update on the additional information by April 16, 2021. (*Id.* ¶ 21.) Thereafter, DMS went silent and ignored the subpoena. (*Id.* ¶ 22.) Petitioner's counsel sent follow up emails requesting an update from DMS regarding its response to the subpoena on April 21, 2021 and May 21, 2021. (*Id.* ¶ 23.) Petitioner's counsel also placed a phone call to DMS's counsel and left a message with a receptionist on June 4, 2021. (*Id.* ¶ 25.) Petitioner has not received a response from DMS since the April 9th email. (*Id.* ¶ 22.)

Based on these facts, Petitioner requests that the Court enter an Order compelling DMS to provide a complete response to the subject subpoena.

## III.  ARGUMENT

### A. This Court Has Jurisdiction To Enforce The DMS Subpoena.

Under the Federal Rules of Civil Procedure, "the district court with jurisdiction to enforce and to quash subpoenas is the 'court for the district where compliance is required[.]'" *Narcoossee Acquisitions, LLC v. Kohl's Dep't Stores, Inc.*, No. 6:14-CV-203-ORL-41TB, 2014 WL 4279073, at *1 (M.D. Fla. Aug. 28, 2014) (citing Fed. R. Civ. P. 45(d)(1), (d)(3), (g)). "For subpoenas seeking the production of documents, the place of compliance must be 'within 100 miles of where the person resides, is employed, or regularly transacts business in person.'" *Collins v. Koch Foods, Inc.*, No. MC 119-008, 2019 WL 2520308, at *2 (S.D. Ga. June 18, 2019) (citing Fed. R. Civ. P. 45(c)(2)(A)).

This Court possesses jurisdiction to enforce the DMS Subpoena. DMS's principal place of business is located within this district. (DMS Annual Report, attached as Ex. 1 to the Smith Decl.) Further, because Petitioner's counsel had a relationship with DMS's counsel[2], the subpoena stated that the documents were to be produced at a mutually agreeable location, and Petitioner has not sought compliance outside this District. (DMS Subpoena, Ex. A.) Rather, DMS's counsel chose to serve the responses via email. (Smith Decl. ¶ 11.) Because DMS's principal place of business is located within this District, the place of compliance is located in this District. As such, the Court possesses jurisdiction to enforce the DMS Subpoena. *See*

---

[2] DMS and SchoolAdvisor are represented by the same outside counsel, Klein Moynihan Turco LLP. (Smith Decl. ¶ 10.)

6

*Narcoossee Acquisitions, LLC v. Kohl's Dep't Stores, Inc.*, No. 6:14-CV-203-ORL-41TB, 2014 WL 4279073, at *1 (M.D. Fla. Aug. 28, 2014) (citation omitted) ("Because compliance is required in the Middle District of Florida, this Court has jurisdiction to enforce or quash the subpoena.").

### B. DMS Waived Formal Service Of The Subject Subpoena.

Service of a subpoena "requires delivering a copy to the named person[.]" Fed. R. Civ. P. 45(b)(1). Courts in the Eleventh Circuit require that service be "reasonably calculated to ensure receipt of the subpoena by the witness." *TracFone Wireless, Inc. v. SCS Supply Chain LLC*, 330 F.R.D. 613, 616 (S.D. Fla. 2019) (collecting cases); *see also Codrington v. Anheuser-Busch, Inc.*, No. 98-2417-CIV-T-26F, 1999 WL 1043861, at *1 (M.D. Fla. Oct. 15, 1999) ("the Court finds that nothing in the plain language of the Rule requires personal service." (citation omitted)).

On January 26, 2021, DMS's counsel confirmed that they were authorized to accept service of the subpoena on behalf of DMS. (January 26, 2021 Email, Ex. B; Smith Decl. ¶ 10.) At the same time, DMS requested additional time to respond to the subpoena, which Petitioner granted. (Smith Decl. ¶ 10.) Put simply, DMS agreed to waive formal service of the subpoena by a process server. Moreover, DMS did not raise any objection to the sufficiency of the service of the subpoena in its response. (*See* DMS Subpoena Response, Ex. E.) Because no objection to service was raised, any potential objection is waived. *See Madeline L.L.C. v. St.*, No. 09-80705-MC, 2009 WL 1563526, at *1 (S.D. Fla. June 3, 2009) ("Failure to timely raise objections results in waiver." (citing Fed. R. Civ. P. 45(c)(2)(B); 9A Charles Alan Wright &

7

Arthur R. Miller, Federal Practice & Procedure § 2463)); *see also Manhattan Constr. Co. v. Phillips*, No. 1:09-CV-1917-WSD-AJB, 2011 WL 13214355, at *13 (N.D. Ga. May 11, 2011) (finding that all objections to a subpoena must be raised at the same time. (citing *In re DG Acquisition Corp.*, 151 F.3d 75, 81 (2d Cir. 1998))).

### C. DMS's Response To The Subject Subpoena Is Deficient.

Under Rule 45, "parties may command non-parties to produce "documents, electronically stored information, or tangible things in that person's possession, custody, or control for inspection, copying, testing, or sampling. *Classic Soft Trim, Inc. v. Albert*, No. Case No. 6:18-cv-1237-Orl-78GJK, 2020 WL 6730977, at *2 (M.D. Fla. Sept. 21, 2020) (collecting cases). The scope of discovery, including for subpoenas, is governed by Rule 26(b)(1), which permits parties to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." *Ocasio v. Nationstar Mortg., LLC*, No. 2:17-CV-40-FTM-38MRM, 2017 WL 4958578, at *2 (M.D. Fla. Nov. 1, 2017) (quoting Fed. R. Civ. P. 26(b)(1)).

For a motion to compel, "the party desiring to enforce a subpoena bears the burden of demonstrating that the information it seeks is relevant." *Digital Assurance Certification, LLC v. Pendolino*, No. 6:17-CV-72-ORL-41TBS, 2017 WL 4342316, at *9 (M.D. Fla. Sept. 29, 2017) (citation omitted). Once the information is determined to be relevant, then "[t]he party opposing a subpoena has the burden of demonstrating that compliance with the subpoena presents an undue burden or that it requires the

8

disclosure of privileged or protected information." *Classic Soft Trim, Inc. v. Albert*, No. 618CV1237ORL78GJK, 2020 WL 6731037, at *6 (M.D. Fla. Mar. 12, 2020).

In response to the subject subpoena, DMS produced only thirteen pages of responsive documents and asserted a handful of boilerplate objections—all of which lack merit. (*See* Smith Decl. ¶ 11; *see also* DMS Subpoena Response, Ex. E.) Following a conferral, DMS agreed to search for and produce additional documents. Despite this agreement, DMS has failed to produce any further information and has chosen to now ignore the subpoena altogether. As such, Petitioner requests that the Court issue an order compelling a complete response to the subpoena. For the convenience of the Court, Petitioner requests that the Court compel a response to four categories of requests—as set forth below.

***Lead Information Identifying Potential Class Members***

First, the subpoena sought documents identifying the records of consumers that DMS claims provided their lead information and consent in the same manner as Petitioner. Specifically, Petitioner requested the following:

> **REQUEST NO. 2:** All DOCUMENTS sufficient to IDENTIFY all PERSONS who provided consent to be texted by or on behalf of DEFENDANT in the same manner that PLAINTIFF allegedly provided consent to be texted who were sent at least one text message on behalf of DEFENDANT.
>
> **RESPONSE:** DMS objects to this Request to the extent that: (i) it is vague and ambiguous as it fails to define the terms "in the same manner" or "sufficient to"; (ii) it is overbroad, unduly burdensome and harassing; and (iii) seeks the production of documents in the possession, custody or control of third parties over which DMS has no control. Notwithstanding

the foregoing, DMS responds that it is not in possession, custody, or control of any responsive documents or information.

**REQUEST NO. 4:** All LEAD INFORMATION that was provided to YOU from CONCEPTUAL MEDIA where the LEAD INFORMATION was obtained in the same manner as any LEAD INFORMATION regarding the Plaintiff was obtained.

**RESPONSE:** DMS objects to this Request to the extent that: (i) it is vague and ambiguous as it fails to define the term "obtained in the same manner"; (ii) it is overbroad, unduly burdensome and harassing; (iii) seeks the production of documents already in Plaintiff's possession, custody or control; and (iv) seeks the production of documents in the possession, custody or control of third parties over which DMS has no control. Notwithstanding the foregoing, DMS responds that it is not in possession, custody, or control of any responsive documents or information.

(DMS Subpoena Response, Ex. E.) The information sought is plainly relevant to ascertain the members of the potential class in the underlying action. Indeed, the proposed class in the underlying action is limited to individuals that SchoolAdvisor "claims it obtained prior express written consent in the same manner as Defendant claims it supposedly obtained prior express written consent to send text messages to Plaintiff." (*See Munoz v. Schooladvisor, LLC*, Case No. 1:20-cv-00440-NONE-EPG (E.D. Cal. 2020), Dkt. 1 ¶ 31.) Moreover, DMS's contract with Conceptual Media—the entity that it claims provided Petitioner's lead information—expressly provides DMS with a license to manage and access the database, which contains the persons that provided consent to be texted. (Conceptual Media Agreement, Ex. D at § 1.1.) Hence, DMS is in possession of the requested information.

Rather than produce the information, DMS asserts boilerplate objections to the requests that lack merit. DMS objects to the requests as vague, ambiguous,

10

overbroad, unduly burdensome, and harassing absent any explanation as to how these objections apply. This is not sufficient to state a valid objection. *See Arch Specialty Ins. Co. v. BP Inv. Partners, LLC*, No. 618CV1149ORL41DCI, 2018 WL 11198249, at *2 (M.D. Fla. Dec. 21, 2018) ("BP asserted boilerplate objections, such as the requests are overbroad, burdensome, or harassing. . . .These boilerplate objections are meaningless and meritless and, as a result, are due to be overruled." (collecting cases)). Contrary to DMS's objections, the requests are limited to the scope of the alleged class in the underlying action. And the information is necessary to provide the Court in the underlying action with a sufficient record to make a determination regarding class certification. Tellingly, after conferring with Petitioner's counsel, DMS agreed to search for and produce this information. (Smith Decl. ¶ 14.) Unfortunately, DMS has refused to produce any additional information.

Because the requested information is relevant and within DMS's possession, the Court should compel DMS to provide a complete response to both requests.

***Records Of Text Messages Sent To The Alleged Class***

Next, the subject subpoena sought documents identifying the records of text messages sent as follows:

> **REQUEST NO. 7:** All DOCUMENTS sufficient to IDENTIFY all PERSONS that were sent at least one text message on behalf of SCHOOLADVISOR during the RELEVANT TIME PERIOD using the SCHOOLADVISOR DIALING SYSTEM where the PERSONS provided consent to be called in the same manner that PLAINTIFF provided any consent to be called.

11

**RESPONSE:** DMS objects to this Request to the extent that: (i) it is vague and ambiguous as it fails to define the term "in the same manner" or "sufficient to"; (ii) it is overbroad, unduly burdensome and harassing; (iii) seeks the production of documents already in Plaintiff's possession, custody or control; and (iv) seeks the production of documents in the possession, custody or control of third parties over which DMS has no control. Subject to, and without waiving the foregoing, DMS responds that it will produce any non-privileged documents responsive to this request in its possession, custody, or control at an agreed upon time and place.

**REQUEST NO. 8:** All DOCUMENTS sufficient to IDENTIFY the total number of text messages, and the date, time, and duration of each such text message, made to each PERSON identified in DOCUMENTS produced in response to Request Number 7 above.

**RESPONSE:** DMS objects to this Request to the extent that: (i) it is vague and ambiguous as it fails to define the term "sufficient to"; (ii) it is overbroad, unduly burdensome and harassing; (iii) seeks the production of documents already in Plaintiff's possession, custody or control; and (iv) seeks the production of documents in the possession, custody or control of third parties over which DMS has no control. Subject to, and without waiving the foregoing, DMS responds that it will produce any non- privileged documents responsive to this request that are discovered to be in its possession, custody, or control. Because of the nature of this extremely onerous request, DMS has been and is continuing to conduct a reasonable investigation so-as to provide the full extent of its discoverable, responsive documents. Discovery continues.

(DMS Subpoena Response, Ex. E.) Similar to Request Nos. 2 & 4, these requests also seek information that is plainly relevant to class certification in the underlying action. Indeed, the requests both seek information concerning the number of text messages sent to persons during the relevant time period that are similarly situated to Petitioner. In other words, these requests seek to identify class members. Further, DMS's agreement with Conceptual Media makes clear that it is DMS that controls the text messaging campaigns. (Conceptual Media Agreement, Ex. D at §§ 2.3, 2.4.)

12

As such, this information is also clearly within DMS's possession.

In response, DMS asserts objections that are substantially the same to those submitted throughout all of its responses. Then, DMS states that it will produce nonprivileged responsive documents "subject to, and without waiving the foregoing" objections. This practice is not permitted in this District. As explained in *Martin v. Zale Delaware, Inc.*,

> [I]t is common practice for a party to assert boilerplate objections and then state that 'notwithstanding the above,' the party will respond to the discovery request, 'subject to or without waiving the objection.' Such an objection and answer preserves nothing and wastes the time and resources of the parties and the court. Further, this practice leaves the requesting party uncertain as to whether the opposing party has fully answered its request.

No. 8:08-CV-47-T-27EAJ, 2008 WL 5255555, at *2 (M.D. Fla. Dec. 15, 2008) (citation omitted); *see also Chambers v. Sygma Network, Inc.*, No. 6:12-CV-1802-ORL-37, 2013 WL 1775046, at *3 (M.D. Fla. Apr. 25, 2013) ("Universal has both objected and then answered 'subject to' and 'without waiving,' its objections. This practice is improper and has been rejected by other courts in this District." (citing *Pepperwood of Naples Condo. Ass'n., Inc. v. Nationwide Mut. Fire Ins. Co.*, No. 2:10–cv–753–FtM–36SPC, 2011 WL 3841557, at *2 (M.D.Fla. Aug.29, 2011); *Martin v. Zale Delaware, Inc.*, No. 8:08–cv–47–T–27EAJ, 2008 WL 5255555, at *2 (M.D.Fla. Dec.15, 2008))). Accordingly, the Court should find that DMS waived its objections with respect to these requests.

Additionally, after conferring with Petitioner's counsel, DMS's counsel agreed to get back to Petitioner regarding whether DMS could identify all individuals that

13

provided lead information in the same manner as Petitioner. (Smith Decl. ¶ 16.) DMS has not provided any additional information to Petitioner. However, the fact that DMS was able to quickly identify the website that it claims Petitioner submitted his contact information through and produce every text message it ever sent to Petitioner supports the conclusion that DMS is capable of producing this information.

In short, DMS should be compelled to provide a complete response to these requests and produce documents identifying all consumers that were sent text messages.

*Dialing System and Computer Database(s) or Server(s)*

Third, the subpoena sought to identify and inspect the dialing system used to place text messages to Petitioner and the server(s) and/or computer system(s) used to store relevant data. Specifically, Petitioner requested the following:

> **REQUEST NO. 9:** All DOCUMENTS sufficient to IDENTIFY the SCHOOLADVISOR DIALING SYSTEM utilized to place text messages to PLAINTIFF, including all user manuals and periodic dialer reports during the RELEVANT TIME PERIOD, together with a physical inspection of the SCHOOLADVISOR DIALING SYSTEM.
>
> **RESPONSE:** DMS objects to this Request to the extent that: (i) it is vague and ambiguous as it fails to define the term "sufficient to"; (ii) it is overbroad, unduly burdensome and harassing; (iii) seeks the production of documents already in Plaintiff's possession, custody or control; and (iv) seeks the production of documents in the possession, custody or control of third parties over which DMS has no control. Subject to, and without waiving the foregoing, DMS responds that it will produce any non- privileged documents responsive to this request in its possession, custody, or control, if any are discovered as a result of DMS's continuing investigation.

**REQUEST NO. 12:** A physical inspection of the server on which the SCHOOLADVISOR DIALING SYSTEM operates and is hosted.

**RESPONSE:** DMS objects to this Request to the extent that: (i) it is vague, lacking in detail, and ambiguous. Who will conduct the inspection? What are their qualifications? Who is to bear the cost of arranging for such inspection?; (ii) The Request is overbroad, unduly burdensome and harassing; (iii) seeks the production of information already in Plaintiff's possession, custody or control; (iv) it is disproportionate to the needs of the case within the meaning of Rule 26; (v) less intrusive, burdensome, and expensive means of discovery are available to satisfy the needs of the case; (vi) seeks production of information protected from disclosure by the attorney-client, work product doctrine, common interest, joint defense or other applicable privilege; and (vii) seeks proprietary trade secret information.

**REQUEST NO. 13:** All Documents sufficient to identify the server and computer system on which is housed or stored any data that may be used to identify persons who were sent similar text messages on behalf of SCHOOL ADVISOR as the messages sent to PLAINTIFF.

**RESPONSE:** DMS objects to this Request to the extent that: (i) it is vague and ambiguous as it fails to define "similar text messages"; (ii) it is overbroad, unduly burdensome and harassing; (iii) seeks the production of documents already in Plaintiff's possession, custody or control; (iv) seeks the production of documents in the possession, custody or control of third parties over which DMS has no control; and (v) seeks production of documents protected from disclosure by the attorney-client, work product doctrine, common interest, joint defense or other applicable privilege. Subject to, and without waiving the foregoing, DMS responds that it will produce any non-privileged documents responsive to this request in its possession, custody, or control, if any are discovered as a result of DMS's continuing investigation.

(DMS Subpoena Response, Ex. E.) These requests seek information that is directly relevant to Petitioner's prima face case. Indeed, demonstrating that the dialing system utilized to place the text messages qualifies as an ATDS is one of the elements of Petitioner's prima facie case. *Chinnis v. World Recovery Serv., LLC*, No.

3:14-CV-218-J-39JRK, 2015 WL 12838177, at *3 (M.D. Fla. May 18, 2015). Thus, absent discovery into the capacity of the dialing system utilized to send the texts at issue, Petitioner's ability to prosecute his case will undoubtably be hampered.

Further, DMS's response to Requests Nos. 9 & 13 again assert boilerplate objections and then agree to produce information subject to those objections. As previously explained, this is improper. Additionally, DMS objects to Request No. 12, which requests an inspection of the server that hosts the dialing system, in part, as follows: "it is vague, lacking in detail, and ambiguous. Who will conduct the inspection? What are their qualifications? Who is to bear the cost of arranging for such inspection?" This is also an improper objection. There is no requirement that Petitioner prove the qualifications of his own expert to DMS's satisfaction prior to conducting an inspection. Further, Petitioner couldn't possibly provide intricate details regarding how the inspection will proceed prior to conferring with DMS. Instead, Petitioner would need to know how many computer systems and servers are in its possession and where the systems and servers are located. All of this can be easily addressed prior to scheduling an inspection.

Moreover, during the conferral call, DMS's counsel stated that it would get back to Petitioner regarding what dialing system was used to transmit the text messages. (Smith Decl. ¶ 17.) Further, DMS's counsel also stated that it was still looking into what computer system(s) were utilized to store the relevant class data. (*Id.* ¶ 19.) Hence, it's clear that DMS has taken minimal efforts to attempt compliance with the subject subpoena, and its continued refusal to do so is improper.

Accordingly, DMS should be compelled to identify the dialing system and computer systems and servers utilized to transmit text messages to the alleged class, and to coordinate with Petitioner's counsel to schedule an inspection of the dialing system, servers, and computer systems.

*Relationship Between DMS and SchoolAdvisor*

Finally, Petitioner sought documents identifying DMS's relationship to the Defendant as follows:

> **REQUEST NO. 5** All DOCUMENTS sufficient to IDENTIFY YOUR complete relationship with DEFENDANT, including all contracts, agreements, and services rendered, together with all communications between YOU and DEFENDANT.
>
> **RESPONSE:** DMS objects to this Request to the extent that: (i) it is vague and ambiguous as it fails to define the term "sufficient to"; (ii) it is overbroad, unduly burdensome and harassing; (iii) seeks the production of documents already in Plaintiff's possession, custody or control; and (iv) seeks production of documents protected from disclosure by the attorney-client, work product doctrine, common interest, joint defense or other applicable privilege. Subject to, and without waiving the foregoing, DMS responds that it will produce any non-privileged documents responsive to this request in its possession, custody, or control, if any are discovered as a result of DMS's continuing investigation.
>
> **REQUEST NO. 11:** All DOCUMENTS sufficient to IDENTIFY any and all communications between YOU and SCHOOLADVISOR regarding PLAINTIFF, this LAWSUIT, or the underlying allegations set forth in the Complaint.
>
> **RESPONSE:** DMS objects to this Request to the extent that: (i) it is vague and ambiguous as it fails to define the term "sufficient to"; (ii) it is overbroad, unduly burdensome and harassing; (iii) seeks the production of documents already in Plaintiff's possession, custody or control; (iv) it is compounded and unintelligible; and (v) seeks production of documents protected from disclosure by the attorney-client, work product doctrine, common interest, joint defense or other applicable privilege. Subject to,

>and without waiving the foregoing, DMS responds that it will produce any non-privileged documents responsive to this request in its possession, custody, or control, if any are discovered as a result of DMS's continuing investigation.

(DMS Subpoena Response, Ex. E.) The information sought is relevant to Plaintiff's claims. That is, discovery has revealed that it was DMS that acquired consumers' information and sent text messages on behalf of SchoolAdvisor. (Smith Decl. ¶ 4.) Put simply, documents identifying the relationship between Defendant SchoolAdvisor and its telemarketer, DMS, are relevant, and the Court should compel DMS to produce all responsive documents in its possession.

In response, DMS again asserts objections and then states that it will produce nonprivileged responsive documents subject to the objections. As previously explained, this is improper, and the Court should overrule the objections. Additionally, to date, DMS has neither provided any documents nor produced a privilege log. Given their relationship (parent and wholly owned subsidiary), it is simply not believable that there are no documents responsive to these requests.

As such, DMS should be compelled to produce all relevant documents in its possession.

## IV.   CONCLUSION

DMS should not be permitted to pick and choose the documents that it sees fit to provide and then opt to ignore the subject subpoena. As explained above, the subpoena requests the production of relevant information, and the Court should enter an order compelling DMS to provide a complete response to the DMS

Subpoena within fourteen (14) days and for such additional relief as the Court deems necessary and just.

## LOCAL RULE 3.01(g) CERTIFICATION

In accordance with Local Rule 3.01(g), Petitioner's counsel certifies that he attempted to confer with Respondent's counsel regarding this Motion. (Smith Decl. ¶¶ 24-25.) Respondent's counsel has not responded to Petitioner's counsel's emails or phone calls. (*Id.* ¶¶ 22, 24-25.) Nevertheless, because this motion commences a *new civil case*, compliance with Rule 3.01(g) is not necessary. *See In re: Subpoena Upon NeJame L., P.A.*, No. 6:16-MC-8-ORL-41TBS, 2016 WL 1599831, at *4 (M.D. Fla. Apr. 21, 2016) ("Rule 45 does not impose a meet-and-confer requirement on non-parties before they file motions to quash subpoenas, and Rule 3.01(g) does not require a party to confer with his opponent before bringing a civil case.").

EDWARDO MUNOZ,

Dated: June 14, 2021

By:   /s/ Ryan S. Shipp
One of Petitioner's Attorneys

Law Office of Ryan S. Shipp, PLLC
Ryan S. Shipp, Esq. (FL Bar Number 52883)
814 W. Lantana Rd. Suite 1,
Lantana, Florida 33462
(561) 699-0399
Email: Ryan@shipplawoffice.com

Taylor T. Smith*
tsmith@woodrowpeluso.com
WOODROW & PELUSO, LLC
3900 East Mexico Avenue, Suite 300
Denver, Colorado 80210

19

Telephone: (720) 907-7628
Facsimile: (303) 927-0809

*Attorneys for Petitioner*

*Pro Hac Vice admission to be sought