UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA

**Edward Munoz**
    **Petitioner,**

Case No. 8:21-mc-00089-VMC-AEP

v.

**Digital Media Solutions, LLC**
    **Respondent.**
_____/

**RESPONSE TO PETITIONER'S MOTION TO COMPEL**

The Respondent, Digital Media Solutions, LLC, files this Response to the Petitioner's Motion to Compel.

**Preliminary Statement**

The main principle governing the discovery process is good-faith. Parties must demonstrate good-faith efforts to properly tailor requests, to adequately search their records, and to supplement discovery responses where needed. Here, DMS made good faith efforts to produce documents relevant to the case and responsive to demands. The circumstances giving rise to Petitioner's underlying claims, as well as the jurisprudence governing the Telephone Consumer Protection Act in general, have combined to make apparent the deficiencies of Petitioner's Rule 45 Subpoena to DMS.

As detailed further herein, the Subpoena seeks production of materials that are irrelevant, overly broad, and not proportional to the needs of the underlying litigation such that the requested production would subject to

DMS to undue and unnecessary burden. Information in the exclusive possession of Conceptual Media (an entity over which DMS has no control) concerning the specific website on which Petitioner's telephone number was submitted and marketing campaign pursuant to which he was contacted is required in order to otherwise prevent the prejudicial disclosure of records that bear no relevance to the claims in the underlying litigation. King Decl. ¶ 6, 7, 10. Petitioner has never sought this information despite long being in possession of actual knowledge of Conceptual Media's connection to the circumstances giving rise to his purported claim. Moreover, the recent United States Supreme Court decision in *Facebook, Inc. v. Duguid*, 141 S. Ct. 1163 (2021) has rendered Petitioner's underlying TCPA claim fatally flawed given his allegations concerning the dialing equipment used to contact him, and therefore any demand for documents or information related to the dialing equipment is irrelevant and inappropriate.

Consequently, the Court should deny Petitioner's application seeking complete production of documents and information sought under the Subpoena.

Underlying Litigation

On March 29, 2020, Petitioner filed a complaint in the United States District Court for the Eastern District of California in which he asserted an alleged violation of the Telephone Consumer Protection Act, 47 U.S.C § 227 *et*

*seq.* ("TCPA"), in connection with his purported receipt of text messages sent by or on behalf of SchoolAdvisor, LLC d/b/a DegreeSearch.org (the "Litigation"). The Litigation involves a single cause of action, alleged violation of the TCPA's autodialer restriction found at 47 U.S.C § 227(b)(1)(A)(iii), which prohibits calling a cellular telephone with an automatic telephone dialing system ("ATDS") without the called party's consent. He has asserted the claim individually, as well as on behalf of a purported class of individuals who were contacted because SchoolAdvisor acquired their respective telephone numbers in the same manner that it acquired Petitioner's.

## Argument

The discovery disputes fall into three categories: class discovery, dialing system discovery, and corporate relationship discovery. The scope of this nonparty discovery is informed by both the subpoena itself and the complaint in the main action. Each of those, as well as the law governing Petitioner's claim in the Litigation, are relevant to determining the appropriateness, relative overbreadth, and the proper scope of the nonparty discovery demanded by Petitioner.

DMS addresses each of the categories as follows:

**Dialing System Discovery (Requests 9, 12, and 13)**

In the underlying Litigation, Petitioner has asserted a single cause of action: violation of 47 U.S.C § 227(b)(1)(A)(iii), which prohibits calls to cellular

telephones using an ATDS without the prior consent of the called party. At the time that Petitioner filed his complaint, as well as at the time that he served the Subpoena, the law concerning which technology and equipment fell within the TCPA's definition of an ATDS was in a considerable state of flux, represented by a significant circuit split. Owing to that uncertainty, the Litigation was stayed in part pending the United States Supreme Court's decision in *Facebook v. Duguid*, 141 S. Ct 1163 (2021). *Facebook* involved a direct challenge to the Ninth Circuit's interpretation of the term ATDS wherein the issue before the Court was "whether [the definition of an ATDS] encompasses equipment that can 'store' and dial telephone numbers, even if the device does not 'us[e] a random or sequential number generator." *Id* at 1167.

On April 1, 2021, the Supreme Court issued a 9-0 decision in *Facebook* in which it answered the foregoing question in the negative. It held "that a necessary feature of an autodialer under § 227(a)(1)(A) is the capacity to use a random or sequential number generator to either store or produce phone numbers to be called." *Id*. At 1173. Further, it stated that "Congress' definition of an autodialer requires that in all cases, whether storing or producing numbers to be called, the equipment in question must use a random or sequential number generator." *Id*. At 1170.

Petitioner's complaint in the Litigation demonstrates the impropriety of the documents and information sought by Requests 9, 12, and 13 in light of the *Facebook* decision. In the complaint, he plainly and expressly alleged that "[t]he telephone dialing equipment utilized by Defendant and/or its agent, which is substantially similar to a predictive dialer, dialed numbers from a list, or dialed numbers form [sic] a database of telephone numbers, in an automatic and systematic manner." Ex. A ¶ 42. Moreover, he both quoted a specific disputed message which referenced him by name (Edwardo) and embedded a screenshot of the same. *Id.* ¶¶ 19, 22, respectively. Thus, by the complaint's own admission, the equipment used to transmit messages to Petitioner did not randomly or sequentially generate numbers to be dialed; rather Petitioner admits that the numbers were deliberately uploaded in list format, neither generated nor stored randomly or sequentially, and that the messages were *targeted specifically to him*. Taking the complaint's allegations as true, there was nothing random about it and the equipment is not an ATDS under the statute.

In fact, these precise allegations contained in Petitioner's complaint have been routinely and systematically rejected as insufficient by courts nationwide in the wake of the Supreme Court's *Facebook* decision. *See e.g., Barry v. Ally Financial*, 2021 WL 2936636, *3 (E.D Mich. July 13, 2021) (dismissing TCPA claims where Plaintiff expressly concedes that her number was likely called

5

from a stored list . . . and thus it was not randomly or sequentially generated and where Complaint . . . fails to plausibly plead that Defendant's dialing system *used* a random or sequential number generator to *make calls* to her); *Hufnus v. DoNotPay, Inc.*, 2021 WL 2585488, *1 (N.D. Cal. June 24, 2021) (Defendant's platform "only contacts phone numbers specifically provided by consumers during [Defendant's] registration process, and not phone numbers identified in a random or sequential fashion" and thus it "does not qualify as an autodialer under the TCPA"); *McEwen v. Nat'l Rifle Ass'n of Am.*, 2021 WL 1414273, *7 (D. Me. Apr. 14, 2021) ("After the *Duguid* opinion, the ATDS portion of the claim requires an allegation that InfoCision used a random or sequential number generator to place a call to Plaintiff's cellphone, not merely a claim that its dialing system has that capability."); *Watts v. Emergency Twenty Four, Inc.*, 2021 WL 2529613, *3 (N.D. Ill. June 21, 2021) (dismissing TCPA claim where complaint merely alleged that dialing equipment stored numbers of persons and was capable of contacting thousands of people a day, not that the system uses a random or sequential number generator); *Timms v. USAA Fed. Sav. Bank*, 2021 WL 2354931, *7 (D.S.C. June 9, 2021) (dismissing TCPA claim where dialing systems were capable of making telephone calls only to specific telephone numbers from dialing lists created and loaded by Defendant); *Barnett v. Bank of America, N.A.*, 2021 WL 2187950 (W.D.N.C. May 28, 2021) (dismissing TCPA claims where Bank of America's dialing

equipment did not use a random or sequential number generator but rather called from a pre-selected list of the bank's accountholders).

Thus, in light of the allegations in Petitioner's complaint and the change in the law as a result of *Facebook*, the Subpoena's demands for documents and information related to, and a physical inspection of, the dialing system used to transmit the subject text messages is not only overbroad and irrelevant but also burdensome and harassing.

While discovery may be broad, it is not unlimited and must be confined by the pleadings themselves. *Barnes v. VI Partnership, Ltd.*, No. 2:09-cv-618, 2010 WL 3079453, at *1 (M.D. Fla. Aug. 8, 2010) (citing Fed. R. Civ. P. 26 Advisory Cmte. Notes). Petitioner does not allege that SchoolAdvisor *used* a random or sequential number generator to produce or store numbers to be called. Again, it is quite the opposite; he has readily alleged that the dialer dialed from a pre-selected list of numbers. That he alleged the system sends messages in bulk without human intervention is immaterial. *Facebook*, at 141 S. Ct. at1171 fn. 6, and 1173 (declining to interpret the TCPA as requiring a determination that automation is sufficient to deem dialing equipment an ATDS).

Each of the dialing system-related discovery requests are irrelevant, but, upon analysis on an individual and specific level, they are also demonstrated to be overbroad, intrusive, and harassing. For example, Requests 9 and 13

7

demand documents identifying and related to the dialing system used to transmit messages to him, as well as the server on which it is hosted. However, as indicated above, Plaintiff's complaint does not shy away from the fact that the dialing system dials from a previously created list of numbers not otherwise generated by the dialer, and his subpoena recognizes that his telephone number was included on such a list not because it was randomly or sequentially generated but rather because it was provided by a third party, Conceptual Media. This is further reinforced by the complaint's definition of the putative class, wherein it is presumed that the numbers contacted were acquired from a third-party source rather than stored and/or produced randomly or sequentially. There is no need for dialer-related discovery.

Moreover, given the foregoing, the demands of Request 12 for a physical inspection of the server on which the dialing system is hosted could not be designed any more perfectly to harass DMS. The oppressive nature of such a request is self-evident, the burden imposed by it apparent. Petitioner demands the most intrusive and burdensome means to glean the functionality of a proprietary dialing system that his own allegations acknowledge does not fit the TCPA's definition of an ATDS. Even in his motion to compel, Petitioner does not cite to anything, whether an expert declaration or even any allegation in the complaint, as to why a physical inspection of DMS's servers is either relevant or necessary to establish that a dialing system hosted thereon utilized

a random or sequential number generator to send messages to him or any putative class member. Understanding how DMS's network is laid out, how its servers are connected, etc. simply bears no relevance to Petitioner's narrow TCPA claim. Discovery is only permissible to the extent that it is relevant to the claims or defenses in the Litigation. *See* Fed. R. Civ. P. 26(b)(1).

Rather than appropriately recognizing the devastating effect of the *Facebook* decision on his claims, Petitioner instead continues to seek irrelevant, overbroad, intrusive, and harassing disclosures from DMS. This Court should not countenance the effort.

**Class Discovery (Requests 2, 4, 7, and 8)**

There are additional concerns regarding Petitioner's demand for class-related discovery beyond the dubious merit of his underlying TCPA following the *Facebook* decision.[1]

The complaint defines the putative class as all persons in the U.S. who received a text message from SchoolAdvisor in the last four years for whom SchoolAdvisor claims to have obtained consent just like it did from Mr. Munoz. Ex. A ¶31. DMS vigorously disputes that any court could certify such a class, owing to the fact that when the defendant provides specific evidence showing

---

[1] Request 7, which demands documents generated through use of the subject dialing system, suffers from the same deficiencies as those shared by Requests 9, 12 and 13.

9

that a significant percentage of the putative class consented to receiving calls, issues of individualized consent predominate. *See Legg v. PTZ Insurance Agency, Ltd.*, 321 F.R.D. 572, 577 (N.D. Ill. 2017).

Nevertheless, the putative class's definition dictates that membership is limited to those who consented in the manner in which Petitioner did. In order to properly apply that scope, information must be obtained from a third-party over which DMS has no control: Conceptual Media, the owner and operator of the website on which Petitioner's lead was generated. Specifically, Petitioner is seeking records related to persons who submitted information to the same website that he did and as part of the marketing campaign pursuant to which he was contacted. King Decl. ¶ 6. However, not only do lead generators such as Conceptual Media generate leads from more than one website at any given time, but it is also ordinary for those websites to routinely undergo material changes for any numbers of reasons, whether it be webpage design changes, revisions to website privacy policies or terms and conditions, alterations to a user flow, or changes to website disclaimers to reflect a new marketing campaign involving different entities to which consent is being provided, enhanced compliance practices or changes in the law.

DMS is without the necessary information that would permit it to sort the data to exclude: (i) lead entries related to websites which Mr. Munoz did not visit or (ii) lead entries generated as part of marketing campaigns pursuant

to which Mr. Munoz would not have been contacted. King Decl. ¶ 6. Thus, to provide relevant documentation related to persons who consented in the manner that Petitioner did, at a minimum at least two levels of information is required from Conceptual Media in order to determine the appropriate subset of data both relevant and narrowly applied to the Subpoena's request: (1) which leads were generated solely on the website which Petitioner submitted his telephone number; and (2) over what time period was the exact version of that website live and operative.

Without that information, DMS simply does not have the means to appropriately narrow down the data set to provide Petitioner with records that consist only of responses relevant to his requests rather than an over-inclusive response that would necessarily include records that were overbroad and irrelevant relative to the request. King Decl. ¶ 10.  The Subpoena's requests presume that Conceptual Media provided leads in a manner sufficient to allow DMS to sort the data to easily, efficiently, or even capably provide only relevant responses.  That was simply not the case. *Id.* ¶ 6.

DMS's status as a nonparty weighs against requiring disclosure of such an overbreadth of information under the circumstances. *See Cytodyne Technologies, Inc. v. Biogenic Technologies, Inc.*, 216 F.R.D. 533, 535 (M.D. Fla. 2003). The Eleventh Circuit recognizes several factors in determining whether the discovery requests represent an undue burden for the nonparty:

11

>    (1) relevance,
>
>    (2) the scope of the document requests,
>
>    (3) the need for the documents, and
>
>    (4) the time covered by the requests.

*Farnsworth v. Proctor & Gamble Co.*, 758 F.2d 1545 (11th Cir. 1985). Nearly all of the data that DMS could possibly produce in response to Requests 2, 4, 7 and/or 8 would include irrelevant information that is unlikely to lead to the discovery of admissible evidence. Petitioner has no need for documents that do not relate to the specific website on which he submitted his telephone number, nor does he have any need for documents related to that website during any time period in which it had material differences from what the webpage looked like when he visited it. Compelling DMS to produce those documents would impose an undue burden and expense on a nonparty and provide Petition with voluminous records that are not proportional to the needs of his claim.

In its good-faith efforts to comply with the subpoena, DMS has sought to obtain information from Conceptual Media to help narrow the data set into a relevant and responsive form that would not otherwise involve facially irrelevant and overbroad documents and information. Those efforts have yielded no results thus far and therefore left DMS unable to supplement its initial responses to the Subpoena. King Decl. ¶ 9.

Petitioner would have this Court believe, however, that it has no other avenue to procure this purportedly relevant information. That is not true. Petitioner has long known of Conceptual Media's connection to the circumstances giving rise to his claims. In fact, Conceptual Media was not only identified in the Subpoena, but it was specifically referenced in the individual requests.

Notwithstanding seeking and obtaining multiple extensions of discovery cut-off deadlines in the Litigation, Petitioner has made no effort to obtain information from its true source: Conceptual Media. However, information within the exclusive possession of Conceptual Media is required in order to avoid the prejudice that would inure from the production of a significantly overbroad dataset (and records related thereto) which is otherwise irrelevant to Petitioner's claim and outside the scope of the definition of the putative class. Thus, the production of any records in DMS's possession in response to 2, 4, 7 or 8 would provide to Petitioner a windfall of data and records bearing little or no relevance to the claims of either him or any putative class member, all to the considerable burden and expense of DMS as well as the substantial prejudice to each DMS and SchoolAdvisor.

**Corporate Relationship Discovery**

Petitioner's final category of discovery seeks information concerning the relationship between DMS and SchoolAdvisor as well as certain

13

communications between the companies. Given the public filings referenced in Petitioner's motion regarding that relationship, and the lapsed deadlines in the Litigation for either the amendment of his pleading or the addition of parties to the lawsuit, Petitioner has simply failed to demonstrate the relevance of any of the requested documentation or how such documents are proportional to the needs of his claim against SchoolAdvisor.

*Request 5.* This request has two parts: the relationship identification and the broad document request. This request's demand for the production of "all contracts, agreements, and services rendered, together with all communications between [DMS] and [SchoolAdvisor]," is facially overbroad. It is also vague insofar as it is unclear whether Petitioner simply wants documentary evidence of the relationship between DMS and SchoolAdvisor with respect to the transmission of the disputed text messages received by Petitioner or if he wants a broad universe of documents that extend far beyond the nexus of Plaintiff, the text messages, and Conceptual Media. Interpreting this request as broadly as it is written is unlikely to lead to the discovery of admissible evidence. More than that, having to produce all the documents listed would impose an enormous burden on DMS, requiring weeks, at best, to cull the data, redact it where needed, and check it for any confidential business information or trade secrets.

*Request 11.* The Request is also facially overbroad. Seeking all documents necessarily includes privileged communications and other work product protected from disclosure. The request is broad enough to make it difficult to even ascertain whether a privilege log is necessary.

## Conclusion

For all of the foregoing reasons, Petitioner's motion to compel should be denied in its entirety.

## Certificate of Service

I certify that a copy of this Response has been sent to all counsel of record through the CM/ECF portal on July 16, 2021.

/s Jacob A. Brainard
**Jacob A. Brainard**
Florida Bar No. 0092278
**Neil E. Asnen**
*Admitted Pro Hac Vice
**KLEIN MOYNIHAN TURCO, LLP**
450 Seventh Avenue, 40th Floor
New York, New York 10123
Email: nasnen@kleinmoynihan.com
Email: jbrainard@kleinmoynihan.com
*Attorneys for Respondent, Digital Media Solutions, LLC*

15